Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4063 | **DATE** | 5/1/2012 |
| **CASE TITLE** | Readus vs. Dercola | | |

**DOCKET ENTRY TEXT**

The City of Chicago's motion to bifurcate § 1983 claims and postpone trial on those claims [#85] is granted as stated herein. Status hearing is set for 5/22/2012 at 8:30 a.m. See statement section of this order for details.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

Defendant, the City of Chicago, has moved to bifurcate plaintiff's claim against the City arising under *Monell* v. *Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), from plaintiff's § 1983 and state law claims against the defendant officers, and to postpone the trial on plaintiff's *Monell* claim.[1]  Because the City must indemnify the officers if they violated plaintiff's constitutional rights, the City contends that bifurcation would avoid a great deal of time and expense which ultimately gains nothing for the plaintiff. Indeed, the City will stipulate to entry of judgment against it if any of the officers is found liable. (*See* Def.'s Mot. to Bifurcate, Ex. A.)  Plaintiff, on the other hand, contends that bifurcation is not in the interest of the litigation and would not promote judicial economy because, under *Thomas* v. *Cook County Sheriff's Department*, 604 F.3d 293, 305 (7th Cir. 2009), a municipality may be held liable under *Monell* even when its officers are not, unless such a finding would create an inconsistent verdict. Moreover, states plaintiff, any possible prejudice to the defendant officers as a result of a joint trial can be addressed by the court via a limiting instruction.

**Background**[2]

Plaintiff alleges that on or about October 16, 2008, he was a passenger in a car heading eastbound on 117th Street between State Street and Michigan Avenue when officers Matt Dercola and Fortino Garibay pulled over the vehicle. Plaintiff exited the vehicle from the passenger side and the officers forced him to the ground where each officer violently lodged a knee into plaintiff's back and repeatedly punched him in the face causing him to suffer a cracked upper tooth and severe pain and bleeding from his mouth. Plaintiff was arrested and charged with battery and resisting arrest, but these charges were later dropped. Plaintiff filed the instant lawsuit seeking to recover against the individual officers on claims of excessive force, false arrest, battery, conspiracy and spoliation of evidence.

| STATEMENT |
|---|

The City was not a named defendant in plaintiff's original complaint. Plaintiff later moved to amend his complaint to add a *Monell* claim against the City after officer Dercola indicated at his deposition that he was found liable for excessive force by a jury in 2010 and he was never disciplined by the City, nor was he suspended, subjected to additional training, or made to discuss his actions with supervising officers as a result of the verdict or earlier complaints for excessive force. (*See* Dkt. #69.) In its reply to the present motion, the City admits that there were two previous excessive force cases brought against officer Dercola; the first case settled in 2008 without a finding of liability against officer Dercola, and the second resulted in a jury verdict against officer Dercola in 2010, after plaintiff was arrested. (Def.'s Reply at 4.) On August 30, 2011, the court allowed plaintiff to amend his complaint to bring a *Monell* claim against the City. (Dkt. #72.)

Plaintiff alleges that the City, through its police department, officers, agents and deputies, maintained an express or implied policy, practice or custom that proximately caused plaintiff to suffer a constitutional violation. Plaintiff's *Monell* claim against the City includes allegations of (1) failure to train; (2) a police "code of silence"; (3) arrestee abuse; (4) failure to intervene; and (5) failure to investigate. The City now moves to bifurcate this claim from those asserted against the individual officers.

**Legal Standard**

Federal Rule of Civil Procedure 42(b) allows the court to order a separate trial of one or more separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *see Krocka* v. *City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). "Only one of [these] criteria need be satisfied for a court to order a separate trial." *Berry* v. *Deloney*, 28 F.3d 604, 610 (7th Cir. 1994) (internal quotation marks and citation omitted). The district court exercises "considerable discretion" when ordering bifurcation of a trial, which can only be overturned for "clear abuse." *Krocka*, 203 F.3d at 516. Should the court decide that bifurcation is warranted, Federal Rule of Civil Procedure 26(d) allows the court to stay discovery on a *Monell* claim. Fed. R. Civ. P. 26(d)(2); *Jones* v. *City of Chicago*, No. 98 C 5418, 1999 WL 160228, at *3 (N.D. Ill. Mar. 10, 1999).

**Analysis**

In *Thomas* v. *Cook County Sheriff's Department*, the Seventh Circuit held that "a municipality can be held liable under *Monell* even when its officers are not, unless such a finding would create an inconsistent verdict." 604 F.3d at 305. *Thomas* interpreted *City of Los Angeles* v. *Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986), which held that municipal liability is foreclosed when an officer defendant is found not guilty of a constitutional violation and the officer declines to assert an affirmative defense, such as qualified immunity, that would allow a jury to find a violation but prevent liability against the officer. The rule from *Heller*, as interpreted by the Seventh Circuit, is not that a municipal liability under *Monell* necessarily requires a finding of officer liability but, rather, that municipal liability is foreclosed only when such a finding would not result in an inconsistent verdict. *Thomas*, 603 F.3d at 305. Thus, the court must look to the nature of the constitutional violation, the theory of municipal liability and the defenses set forth to determine whether a municipality's *Monell* liability is dependent upon that of its officers. *Id.*

Plaintiff cites a number of cases in support of his position that bifurcation is inappropriate in this case. The majority of these cases, however, concern situations where the plaintiff was in custody and the officer failed to attend to his medical needs or otherwise protect him from harm. *See, e.g., Martinez* v. *Cook Cnty.*, No. 11 C 1794, 2011 WL 4686438, at *1 (N.D. Ill. Oct. 4, 2011) (inmate battered by other inmates because officer was "cross-watching," a policy authorized by the Sheriff); *Carter* v. *Dart*, No. 09 C 956, 2011 WL 1466599,

at *1 (N.D. Ill. Apr. 18, 2011) (officers denied inmate medical treatment because jail pharmacy did not provide necessary drug); *see also Nessel* v. *City of Northlake*, No. 93 C 6176, 1994 WL 685508, at *2 (N.D. Ill. Dec. 5, 1994) (city officials could be found not liable for First Amendment violation because they could be successful in their qualified immunity defense).  In each of these cases, the court found that the plaintiff's claims against the individual officer and the governmental unit left open the possibility that the governmental unit could be found liable to the plaintiff, while the officer could be found not liable, or qualifiedly immune.

Plaintiff, however, has failed to demonstrate if and how each of his individual claims poses the risk of an inconsistent verdict against the City, instead arguing generally that bifurcation is inappropriate because (1) the defendant officers have pleaded qualified immunity as a defense; and (2) it is possible that the jury could find that plaintiff's constitutional rights were violated but could not determine which of the officers was liable.  Qualified immunity is only available as a defense if the officers' conduct "does not violate clearly established statutory or constitutional rights that a reasonable person would know about,"[3] *Mustafa* v. *City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006), and the probability that this defense will foreclose officer liability on all of plaintiff's claims is low.  *See, e.g., Elrod* v. *City of Chicago*, Nos. 06 C 2505, 07 C 203, 2007 WL 3241352, at *5 (N.D. Ill. Nov. 1, 2007) ("the likelihood of defendant prevailing on [a qualified immunity] defense in the context of an excessive force claim has not been a persuasive argument against bifurcation"); *Tanner* v. *City of Waukegan*, No. 10 C 1645, 2011 WL 686867, at *6 (N.D. Ill. Feb. 16, 2011) (collecting cases); *see also Sallenger* v. *City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) (recognizing that "a municipality cannot be liable under [a] *Monell* [failure to train claim] when there is no underlying constitutional violation by a municipal employee.").[4]  Indeed, the notion that such a defense would be asserted in an excessive force case is questionable under Federal Rule of Civil Procedure 11.  In short, unlike the cases plaintiff cites, here the City can only be liable if plaintiff proves that excessive force was used on him.  If excessive force was used, then it was inflicted by at least one of the officers. There is a theoretical possibility that the jury could find excessive use of force but not be able to decide which officer used excessive force. That unlikely possibility could be managed with a special interrogatory: "We the jury find that excessive force was used on plaintiff, but we cannot determine that either defendant used excessive force."  Even in this instance, if damages are assessed, the court understands that the City's stipulation would require it to pay the judgment.  If this is correct, there cannot be an inconsistent verdict in which the City is liable but an officer is not.

In addition, a review of the complaint leads the court to conclude that judicial economy favors bifurcation. Typically, "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them." *Moore* v. *City of Chicago*, No. 02 C 5130, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007).  The "the willingness of many judges to grant [motions to bifurcate *Monell* claims] stems in large part from [this] recognition." *Terry* v. *Cook Cnty. Dept. of Corrs.*, No. 09 C 3093, 2010 WL 2720754, at *2 (N.D. Ill. July 8, 2010).  The question of whether the City maintains a citywide practice, policy or custom concerning issues (1) through (5) described above is an onerous one, and although officer Dercola received no discipline after his 2010 case, this shortcoming occurred after plaintiff was arrested and likely has little bearing on the merits of his claims.

Moreover, presenting evidence to the jury regarding a citywide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case.  *See, e.g., Lopez* v. *City of Chicago*, No. 01 C 1823, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002) ("Without bifurcation, the jury would likely hear evidence against the City of various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be

| STATEMENT |
|---|
| prejudicial to the individual defendants."). Finally, the City has stipulated to entry of judgment against it if any of the officers is found liable. This type of stipulation has been found to support bifurcation in other cases. *See Elrod*, 2007 WL 3241365, at *5 ("To the extent that a successful *Monell* claim serves to ensure payment of the damages to Plaintiffs, that goal is achieved by the Stipulation.") (collecting cases). For the foregoing reasons, the City's motion to bifurcate the *Monell* claim against the City and postpone discovery on the *Monell* claim pending resolution of plaintiff's claims against the individual officers is granted. |

1. The City's motion is titled "motion to bifurcate § 1983 claims and to postpone trial on those claims." (Dkt. #85.) After reading the motion, the court understands the City's request to include postponement of trial on the *Monell* claim, not the § 1983 claims. Moreover, the City seeks to postpone trial, but does not ask the court to stay discovery, although it discusses the benefits of doing so in its motion. (*See* Def.'s Mot. to Bifurcate at 3–4.) Given that a trial date has not been set in this case, the court believes that the City may have mislabeled its motion and will treat its request as one to stay discovery not simply to delay trial.

2. The following facts are taken from the amended complaint. The City sets forth a number of facts in its reply brief, relying on testimony from officer Dercola's deposition and the deposition of third-party witness Tameka Ruth. The City did not attach these depositions as exhibits to its brief, and because these facts were raised for the first time in reply, plaintiff has not had an opportunity to respond to them. The court therefore declines to consider the additional facts set forth by the City.

3. "A plaintiff seeking to defeat this defense in a Section 1983 action must show, first, that the plaintiff's rights were violated. Second, the plaintiff must show that the law concerning the plaintiff's asserted right was clearly established at the time the challenged conduct occurred. Finally, the court must determine whether a reasonably competent official would know that the conduct was unlawful in the situation he confronted." *Mustafa*, 442 F.3d at 548 (internal citation omitted).

4. The City states that "[b]ased upon the factual scenario of this case, it seems unlikely that a qualified immunity defense would be applicable." (Def.'s Reply at 6.)